White, J.
The errors relied on in this case arise on the giving iand refusing instructions by the court to the jury.
'20] *The first question in order, for consideration, is to ascertain by what statute the compensation of Cricket as auditor is reg•ulated.
The plaintiffs in error claim that the statute in question is the ract of March 30, 1859, 1 S. & C. Stat. 636, while the defendant in •error insists that the rule of compensation is prescribed by the act -of May 1, 1862, 59 Ohio L. 104.
The court below adopted the view last named.
The question depends upon the proper construction of the repealing section of the act of 1862.
Under the act of March 30, 1859, the rule for compensating -county auditors was by foes. By the act of February 7, 1861, 58 •Ohio L. 7, this rule was changed, and the compensation, above a •minimum sum applicable to all the counties, was graduated according to the adult male inhabitants of the several counties.
The object of this act was to reduce the compensation allowed by the act of 1859 ; but by section 3, the new rule was made applicable only to those coming into office on or after October 1,1861, .auditors in office before that date being compensated by theoldrule.
The act of May 1, 1862, adhered to the principle introduced by •the act of February 7, 1861-, of graduating compensation according *21 to population, and was intended to effect a further reduction in the compensation of county auditors.
The effect of this act was to provide for two classes. The auditors in office at the time of the passage of the act, constituting the first class, were, thereafter, to be compensated according to the rule prescribed by the act of 1861; and those coming into office after the passage of the act, and constituting the second class, were to be compensated by the new rule prescribed in the act. Though the provisions in the third section are awkwardly framed, this, it seems to us, is the clear meaning of the terms employed.
The court, therefore, in our opinion, did not err in its instructions as to the statutes by which the compensation in question was regulated.
It is, however; contended for the plaintiffs in error, that the act of 1861 and the act of 1862, are in conflict with sections *20 [21 and 26 of article 2 of the constitution, and are therefore void.
Section 20, so far as pertinent to the question before us, provides that “the general assembly, in cases not provided for in this constitution, shall fix the term of office and the compensation of all officers,” etc.
The duty enjoined by this section in regard to fixing the compensation of officers, does not require the general assembly to fix the sum or amount which each officer is to receive, but only requires that it shall prescribe or “fix ” the rule by which such compensation is to be determined.
The rule of compensation adopted by the act of 1859, was by fees for the particular services performed. The result of this uniform rate of fees was either to make the compensation of officers inadequate in the small counties, or exorbitant in the larger and more populous ones; for, if the rate was sufficiently high to yield in the aggregate an adequate compensation in the small counties, where there was but little business, though the office required all the time of the officer, the same rate in populous counties where there was much business, would produce a compensation unreasonably high. To obviate this evil, the legislature, under the idea perhaps that the rule was required to be uniform throughout the state, adopted the mode prescribed by the acts of 1861 and 1862, graduating compensation above a certain sum according to population, and vesting in the commissioners in certain eases the power of making discretionary allowances; but neither under the last-named acts, nor under *22 the act of 1859, was the amount of compensation fixed by law. All that was done in either case, was to fix or prescribe the rule by which the compensation was to be — and to a certainty could be— ascertained.
The part of section 26 claimed to be infringed, provides that “all laws of a general nature shall have a uniform operation throughout the state.”
It is urged that the acts in question divide county auditors into-at least two classes, and provide a different rule of compensation for 22] each class, and that consequently, in their ^operation, these-laws lack the element of uniformity which this section of the constitution requires.
The effect of the act of 1862, as already remarked, is to prescribe one rule of compensation for auditors in office at the time of its passage, and another for those coming into office afterward. Each rule, has a uniform operation to the extent that it operates at all.
"Without undertaking to define the scope and operation of this-provision of the constitution, it seems to us there is no invasion of it by the act in question.
It clearly was not intended to require that an act providing a new rule of compensation of officers subsequently coming into office should be invalid, unless it also applied to the future services of existing officers.
If such officers were paid by salaries, the legislature could not affect them during their term (Thompson v. Phillips, 12 Ohio St. 617); but if they were compensated otherwise, whether their compensation should be governed by the new rule or not, was a question of legislative discretion.
There is nothing in the constitution prohibiting appropriate local legislation; and for myself I will say, that it seems to me the amount of compensation to be attached to a local office is a question in its-nature local, and that a law to regulate such compensation can not properly be regarded as a law of a general nature.
The remaining question is, whether the acts of Cricket complained of constituted a breach of his bond. We think they did.
The second section of the “ act prescribing the duties of county auditors,” passed April 4, 1859 (S. & C. Stat. 96), requires the bond to be “conditioned for the faithful discharge of the duties of his. office.”
Section 4 of the same act authorizes suit to be instituted “ for the: *23 ■use of the state, county, or any party or persons injured by the misconduct in office of the auditor, or by the omission of any duty required of him by law.”
Section 3 specifies certain cases of delinquency in which it is made the duty of the commissioners to institute suit on the bond, and when such suit shall have been commenced, *they are author- [23 ized to remove the auditor from office. The breach alleged in this case is not one of those specified in this section; but the object of the section is not to limit the remedy on the bond to the specified cases, but to make it the duty of the commissioners, in the cases named, to put the bond in suit. The question in this case, therefore, is unaffected by this section.
The acts of 1861 and 1862, supra, provide that the compensation of the auditor is “ to be paid out of the county treasury on the order of the county commissioners.”.
The order here meant is a written order, the original, or an authenticated copy of which, will constitute a warrant and a voucher to the treasurer for the money paid in pursuance of it. It is admitted in the bill of exceptions that, in this case, no such order existed or had ever been given.
The money was obtained on the auditor’s own warrant drawn as ■auditor, and which he was not. authorized by law to draw or use for such purpose. The warrant purported to be an official act; it was drawn under color of office, and constituted the means by which the money was obtained from the treasury. If no more money had been obtained than was due the auditor, though there would have been a misfeasance in the mode of obtaining it, there would have been no substantial injury. But, to the extent the money obtained exceeded the amount due, there was substantial injury for which the bond, in our opinion, afforded a remedy.
But the action of the auditor in drawing the warrant and obtaining the money is sought to be justified to the extent of defeating any liability upon the bond, by section 13 of the act of April 4, 1859. S. & C. Stat. 98. This section provides : “No claims against the county shall be paid otherwise than upon the allowance of the county commissioners upon the warrant of the county auditor,” etc. And the charges asked seem to be founded on the supposition that the language quoted applies to the auditor’s claim for compensation. But this is a mistake. The language is broad enough to include it, but it clearly was not intended to do so. The mode of *24 obtaining bis compensation was specially provided for by the “ act 24] to regulate the fees of county auditors” (S. & C. *Stat. 637), until that act was repealed by the third section of’the act of February 7, 1861. The repealed act referred to provided that: “The auditor shall in all cases be paid his fees out of the county treasury, on the order of the county commissioners, who shall be satisfied of the correctness of the account rendered by the auditor; and the' same shall be authenticated by his oath, and filed with the county treasurer.” On the repeal of this act by the act of 1861, the new mode prescribed was that the auditor’s compensation should “ be paid out of the county treasury on the order of the county commissioners.”
Section 13, of the act of April 4, 1859, has therefore no application to the compensation due auditors for their official services.
To guard against being misunderstood, it is proper to say we do not mean to hold that, if the money had been regularly obtained, by the auditor, the mistake of the commissioners in ordering the-payment of an excessive amount would have laid the foundation! for an action on the bond.
Our ruling is confined to the case before us, and is founded upon; the unauthorized action of the auditor in drawing the money.
The instructions to the jury were, perhaps, not literally correct;. yet, in view of our holding as to the law, the instructions, as applied to the facts of the case, could not have prejudiced the defendant below.

Judgment affirmed.

Day, C. J., and Brinkerhoff, Scott, and Welch, JJ., concurred.